IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**DORIS W. ROGERS and FRANK ROGERS**                           **PLAINTIFFS**

**VS.**                                   **CIVIL ACTION NO. 3:05-CV-57-HTW-LRA**

**SHELTER MUTUAL INSURANCE COMPANY**                           **DEFENDANT**

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Before the court is the Defendant's Motion for Summary Judgment [doc. no. 31] filed pursuant to Rules 56(b)[1] and (c)[2] of the Federal Rules of Civil Procedure.

### I. Relevant Facts and Procedural History

This action is based on the denial of insurance coverage and other claims arising from Defendant's handling of mold-related claims. This case involves a dispute between plaintiff Doris Rogers[3] and her insurance company, defendant Shelter Mutual Insurance Company ("Shelter"), regarding damage to Rogers' residence due to the presence of mold.

Rogers owned a homeowners' insurance policy issued by Shelter since 1990. Complaint, ¶ 12. The policy covered eighteen named perils. The list of covered causes of damage includes:

---

[1] Prior to the 2010 amendments, Federal Rule of Civil Procedure 56(b) provided, in pertinent part, that "[a] party against whom a claim ⋯ is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2] Prior to the 2010 amendments, Federal Rule of Civil Procedure 56(c) provides in pertinent part:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[3] Doris Rogers and her husband Frank Rogers initially filed this suit. Frank Rogers is deceased. Pursuant to a Motion to Dismiss filed by defendant Shelter, unopposed by the plaintiffs, this court dismissed Rogers as a party on April 1, 2008.

1

>(1) fire or lightning; (2) windstorm or hail; (3) explosion; (4) riot or civil commotion; (5) aircraft; (6) vehicles; (7) smoke; (8) vandalism and malicious mischief; (9) theft or attempted theft; (10) breakage of glass; (11) volcanic eruption; (12) falling objects; (13) weight of ice, snow, or sleet; (14) collapse of building or any part of a building; (15) sudden and accidental tearing apart, cracking, burning or bulging; (16) accidental discharge or overflow of water or steam; (17) freezing; and (18) sudden and accidental loss caused by artificially generated electrical currents.

Policy, pp.6-8, Defendant's Motion, Exh. J.

Rogers states that "[i]n 2001, and at times prior to 2001, her home became infested with mold spores," Complaint, ¶ 19. She filed a claim with Shelter for loss due to the mold. Complaint ¶ 19. Rogers signed an authorization for Shelter to investigate her property on December 5, 2001. Defendant's Motion, Exh. B. David Holman, a consulting engineer, inspected Rogers' home on behalf of Shelter. Complaint, ¶ 26; Defendant's Rebuttal, Exh. 2. Rogers says Holman failed to conduct a thorough inspection. Complaint, ¶ 26. Holman's report, to Shelter, dated January 3, 2002, concluded that:

>[a]fter an inspection of the dwelling, it appears the mold and mildew is (sic) the result of the moisture from condensate on the inside walls. This condensate (sic) is due to a poor heating, ventilation and air-conditioning system in the dwelling. There is no evidence of water entering through the roof walls or floor. Much of the mold could be reduced through good housekeeping practices.

Defendant's Motion, Exh. K.

Shelter denied Rogers' claim. Complaint, ¶¶ 20, 27. Shelter informed Rogers by letter dated January 15, 2002, that Holman concluded from his inspection that the mold in Rogers' home was a result of moisture from condensation on the inside walls and that the type of moisture and resulting damage in her home was not covered by the policy. Defendant's Rebuttal, Exh. 2. The letter explained that "any fees incurred in the inspection and/or treatment of the mold and related damage will not be covered by your policy with Shelter Mutual (sic) and you

will be responsible for payment of same." Defendant's Rebuttal, Exh. 2. On January 19, 2001, Rogers borrowed $20,000.00 from AmSouth Bank purportedly for the purpose of identifying the source of the mold. Plaintiff's Response, p. 4 and Exhibit, Disclosure Statement.

Rogers and Shelter continued to correspond by letter. In two of these letters, dated February 1, 2002, and April 2, 2002, Shelter stated that it would reconsider its coverage determination upon Rogers' submission of new or additional information. Defendant's Rebuttal, Exh.s 3, 4.

Rogers avers that at the time she first reported the mold to Shelter, she owned an HO-7 policy which, according to her, would have provided for recovery of the loss. Complaint, ¶ 28. Rogers claims that Shelter wrongfully "converted" her policy from an HO-7 policy to a HO-3 policy, which specifically excluded mold coverage. Complaint, ¶ 29, (alleging "[Shelter] forced conversion of [her] insurance from a policy providing coverage for mold loss to a policy form excluding such loss. . .when [Shelter] had actual and constructive knowledge that the home was infected and contaminated with mold spores").

Rogers filed suit on September 3, 2004 in the Circuit Court of Hinds County, Mississippi, against Shelter Mutual Insurance Company; a Missouri Corporation registered to do business and doing business in Mississippi; Curtis Watts, P.A., in its own capacity and as an agent of Shelter Mutual Insurance Company; Curtis Watts, individually and as an agent of Shelter Mutual Insurance Company; Leslie A. Bryant, individually and as an agent of Shelter Mutual Insurance Company; and Marion David Holman doing business as Holman and Associates Consulting Engineers and Planners, individually and as agent of Shelter Mutual Insurance Company. Rogers asserts six claims: 1) breach of fiduciary duty; 2) negligence; 3) gross negligence; 4) bad faith refusal to pay; 5) fraud; and 6) intentional infliction of emotional distress.  Complaint, ¶¶ 30-42.

## II. Jurisdiction

Shelter removed the suit to this court on January 25, 2005, on the basis of diversity jurisdiction under Title 28 U.S.C. § 1332. Section 1332(a)(1) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between Citizens of different States." For the purposes of determining diversity jurisdiction for removal, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . ." 1332(c)(1).  Rogers is a citizen of Mississippi, and Shelter Mutual is incorporated in and has its principal place of business in Missouri.[4] This court is satisfied that it has jurisdiction of the present matter.

Discovery has concluded, and Shelter asserts that Rogers' claims are ripe for dismissal as there is no genuine issue of material fact necessitating a trial on these issues.

## III. Law and Analysis

At the hearing in this matter, Rogers expressly abandoned all claims except her negligence and gross negligence claims.[5] Accordingly, this court dismisses the claims of breach of fiduciary duty, bad faith, fraud and intentional infliction of emotional distress.  This court will now determine if there is any genuine issue of material fact as to Rogers' negligence claims.

---

[4]The other defendants against which the suit was initially filed were Mississippi citizens and, accordingly, were dismissed for improper joinder in this court's order denying Rogers' motion to remand. Order, March 30, 3006 [doc no. 11].

[5]Also, Rogers only presents arguments in her submissions for summary judgment on the issue of negligence and gross negligence.

### A. Standard for Summary Judgment

A party is entitled to summary judgment under Fed. R. Civ. P. 56 if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). The threshold question is: are there "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated "where the facts and the law will reasonably support only one conclusion." *McDermott Intern., Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 80 L.Ed.2d 538 (1986) (citation omitted). "Guesswork and speculation simply cannot serve as a basis for sending a case to a jury." *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir. 1996). *See also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'") (citation omitted).

A party, the movant or non-movant, must support the assertion of an issue or fact or no issue of fact by "citing to particular parts of materials in the record" or "showing that the materials cited to do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1). This court need consider only materials cited by the parties. Rule 56(c)(3).

**B. Analysis**

Shelter contends that Rogers has failed to present any evidence to establish any of the necessary elements of negligence or to establish that Shelter's conduct was grossly negligent. An action for negligence requires the claimant to establish: duty, breach, causation and damages. *Aetna Cas. & sur. Co. v. Pendleton Detectives, Inc.*, 182 F.3d 376, 378 (5th Cir. 1999) (citing *Lovett v. Bradford*, 676 So. 2d 893, 896 (Miss. 1996)). In order to show gross negligence, a party must establish that the accused engaged in a "course of conduct which, under the particular circumstances, disclosed a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Turner v. City of Ruleville*, 735 So. 2d 226, 229 (Miss. 1999) (quoting *Dame v. Estes*, 233 Miss. 315, 101 So. 2d 644, 645 (1958)).

Rogers summarizes her negligence/gross negligence claim as alleging that Shelter "negligently failed to explain the subject insurance policy to [Rogers]; and negligently failed to properly follow, and/or apply industry standards as to the inspection, evaluation, and adjustments of [Rogers'] claim reported under the subject policy." Plaintiff's Response to Motion for Summary Judgment, p.2; Complaint, ¶ 35.

**1. Negligent Failure to Explain**

Rogers says she would not have suffered costs and damages had Shelter informed her that it could not possibly cover the losses based on its policy. Plaintiff's Response, p.2. Rogers argues that Shelter breached its duty to explain and caused her damages by advising her, after Shelter had performed an inspection and sent her denial letters, that mold could be covered by the policy depending on what Rogers determined to be the source of the mold. Plaintiff's Response, pp.3, 5. Rogers says she is due expenditures incurred, including the $20,000.00 line of

credit she obtained from AmSouth, in attempt to identify the source, because she incurred the expenses based on Shelter's suggestion to identify the source and representations of possible coverage depending on Rogers' findings. Plaintiff's Affidavit, ¶ 2; Plaintiff's Response, p.5.

Rogers relies on *Aetna v. Berry*, 669 So. 2d 56 (Miss. 1996) to illustrate the duty of an agent to explain coverage. Plaintiff's Response, p. 3. In *Berry*, the Mississippi Supreme Court held that an insurer has a duty to explain statutory requirements and options for uninsured motorist coverage to a potential insured before the potential insured purchases uninsured motorist coverage.[6] The Court stated that:

> in order for an insured to have an option to increase UM limits not to exceed the limits of the policy, or for the insured to completely reject UM coverage in writing, an insurance agent has a duty to explain UM coverage as outlined above. An agent is not necessarily under a duty to recommend that the insured exercise the option of obtaining UM coverage up to the limits of the policy; however, before an insured may make an intelligent decision about how much UM coverage he wants, or make a knowing waiver of UM coverage in writing (which the agent must obtain if there is to be no UM coverage under the policy), he must understand what he is entitled to.

---

[6] The statute from which the insurer's duty arose in *Berry* was Miss. Code Ann. § 83-11-101(1), which states:

> (1) No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the commissioner of insurance; however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section. The coverage herein required shall not be applicable where any insured named in the policy shall reject the coverage in writing and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in any renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

*Berry*, 669 So. 2d at 76.[7] Violation of that duty can support a finding that the agent was negligent. *United States Fid. & Guar. Co. v. Estate of Francis*, 825 So. 2d 38, 51 (Miss. 2002). Under the principles of agency, an insurer is bound by the acts of its agents. *Id.*

This holding in *Berry* does not apply to the case *sub judice*. As Rogers notes, "this broad duty to explain would not apply in all insurance arrangements. . ." Plaintiff's Response, p.3. The issue in this case is not the insurer's duty to explain a statutory requirement or option. The duty, as Rogers states it, in this case, was for Shelter to explain to her what the policy provides in relation to mold coverage. "In Mississippi, a person is charged with knowing the contents of any document that he executes." *Andrus v. Ellis*, 887 So. 2d 175, 180 (Miss. 2004) (citing *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 725 (Miss. 2002)). *See Andrus*, 887 So. 2d at 180 ("A person is under an obligation to read a contract before signing it" and will not generally be heard to complain of the misrepresentation or omission of a contract term when the term would have been disclosed by reading the contract.) (citation omitted).

Shelter contends that it expended reasonable efforts to investigate the claim and to identify the course of the mold and did not breach a duty in stating that it was open to new information about the claim. Shelter asserts it is not liable for Rogers' independent actions and decisions.

Rogers had an absolute duty under Mississippi law to read her insurance policy and is charged with the knowledge of its contents. Rogers had been in possession of the policy since

---

[7]This court notes that the Mississippi Supreme Court has since overruled its declaration that an insurer has a duty to explain uninsured motorist coverage to the extent required in *Berry* . See *Alley v. Northern Ins. Co.*, 926 So. 2d 906, 909 (Miss. 2006) ("We have recently partially overruled *Berry*, holding that an insurance agent has no absolute, court-created duty to explain an insured's right to purchase additional uninsured motorist coverage over and above the amount of coverage required by statute.") (citing *Owens v. Miss. Farm Bureau Cas. Ins. Co.*, 910 So.2d 1065, 1074 (Miss. 2005)).

1990, for approximately fourteen (14) years before filing suit.  Rogers alone is responsible for having read the insurance policy before executing it and for the consequences of her actions based on a notion contrary to those terms. Accordingly, Rogers has no claim for negligence by simply alleging that certain content in her insurance policy was not explained to her. This court finds no genuine issue of material fact as to whether Shelter committed negligence by failing to explain the policy to Rogers.

### 2. Negligent Failure to Follow Industry Standards

Rogers also asserts that Shelter failed to follow industry standards in its handling of Rogers' claim. In alleging that Shelter has breached its duty of care by failing to act in conformity with industry standards, Rogers has provided no standard for this court to utilize as a measure. Rogers simply repeats a conclusory contention that Shelter has failed to perform its duty in accordance with industry standards. Rogers, therefore, has failed to establish the duty that Shelter purportedly breached in its handling of Rogers' claim. Finding that Rogers has failed to establish the first element of her negligence claim – duty, this court finds no genuine issue of material fact as to whether Shelter committed negligence by failing to conform to industry standards.

### 3. Gross Negligence

Finally, since Rogers has failed to establish her claim of simple negligence in the face of summary judgment, she has certainly failed to establish the conduct by Shelter needed to constitute gross negligence. Conduct that does not constitute simple negligence cannot meet the more egregious standard of gross negligence. *See Williams v. Duckett*, 991 So. 2d 1165, 1177 (Miss. 2008) (an award of punitive damages requires a showing of gross negligence; thus,

conduct that only constitutes simple negligence does not support an award of punitive damages). This court finds that there is no genuine issue of material fact as to Rogers' claim for gross negligence.

## IV.  Conclusion

Shelter has filed a motion for summary judgment, arguing that there is no genuine issue of material fact as to the only remaining claims – negligence and gross negligence. Rogers has not directed this court to any materials in the record that support the existence of a genuine issue of material fact as to her remaining claims. Having applied the appropriate juridical principles to the undisputed material facts of this lawsuit, viewing the facts in a light most favorable to the non-movant, this court is persuaded to grant Shelter's motion for summary judgment [doc. no. 31]. This court will enter a Final Judgment in accordance with the local rules.

SO ORDERED, this the 29th day of September, 2011.

> s/ HENRY T. WINGATE
> UNITED STATES DISTRICT JUDGE

Civil Action No. 3:05-cv-57 HTW-LRA
Order Granting Summary Judgment